**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: 1:26-cv-27812

PROMEDIA INC.,

Plaintiff,

vs.

ADLOOP MEDIA USA, INC. and
ADLOOP MEDIA INC.,

Defendants.
_______________________________/

## COMPLAINT

Plaintiff, ProMedia Inc. ("ProMedia"), files suit against Defendants Adloop Media USA, Inc. and Adloop Media Inc. (together, "Adloop"), and alleges as follows:

## INTRODUCTION

1. Plaintiff is an advertising agency which buys television, radio, and digital advertising on behalf of its clients. Plaintiff contracted with Defendants Adloop Media Inc. and Adloop Media USA, Inc. to run $500,000.00 worth of television commercials on streaming services and paid the entire $500,000.00 up front. The contract required Defendants to prove the commercials actually ran, and to give Plaintiff its money back if the advertising did not produce the results Defendants promised. Defendants never produced the proof and when Plaintiff cancelled the contract and demanded its money, Defendants kept it.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff ProMedia Inc. is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

3. Defendant Adloop Media USA, Inc. is a Delaware corporation, Delaware File No. 5095122, incorporated on February 11, 2021. Its registered agent is A Registered Agent, Inc., 8 The Green, Suite A, Dover, Delaware 19901.

4. Defendant Adloop Media Inc. is a foreign corporation with its principal place of business at 250 Yonge Street, Suite 2201, Toronto, Ontario M5B 2L7, Canada.

5. The IO described below was signed on behalf of "Adloop Media Inc." by Joshua Segal. The Guaranty executed in connection with the IO recites that the IO was made "by and between Adloop Media USA, Inc., a Delaware corporation (the 'Company'), and the Client," and further recites that Segal is "a stockholder and employee of the Company." The two documents identify different Adloop entities as ProMedia's counterparty.

6. ProMedia therefore pleads in the alternative that the IO was entered into by Adloop Media USA, Inc., by Adloop Media Inc., or by both, and that one or both are liable on each count below. Both entities are referred to collectively as "Adloop."

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332. ProMedia is a citizen of Florida. Adloop Media USA, Inc. is a citizen of Delaware. Adloop Media Inc. is a citizen or subject of Canada. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This Court has personal jurisdiction over Adloop under Fla. Stat. §§ 48.193(1)(a)(1), (a)(2), and (a)(7). Adloop solicited and transacted business in Florida, entered into a contract with a Florida corporation, accepted $500,000.00 wired from Florida, agreed to perform services for the benefit of a Florida business, and failed to perform acts required by the contract to be performed in Florida, including the return of ProMedia's funds. Adloop's contacts with Florida were purposeful and continuous throughout the parties' relationship.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred here, and under 28 U.S.C. § 1391(c)(3) because Adloop Media Inc. is not a resident of the United States and may be sued in any judicial district.

## FACTUAL ALLEGATIONS

10. On or about November 28, 2025, ProMedia and Adloop entered into an Insertion Order Contract for connected television advertising services (the "IO"). The IO was executed through Adobe Acrobat Sign on December 9, 2025. A copy of the IO is attached as Exhibit 1.

11. Under the IO, Adloop is the "Agency" and ProMedia is the "Client."

12. The IO required Adloop to provide connected television advertising across its publishing outlets, with impressions eligible for delivery through December 31, 2026.

13. The IO required ProMedia to pay $500,000.00 upon execution, by wire transfer.

14. ProMedia paid Adloop $500,000.00 by wire transfer.

15. The funds were paid for advertising services under the IO and were earmarked for that purpose. The IO provides that ProMedia's fees were "being deposited with Agency as of the execution of the Insertion Order as a credit against which Client shall be permitted to purchase CTV advertising."

16. The IO gave ProMedia the right, at any time within the first 90 days following the date ProMedia's first advertisement ran, to cancel the IO for any reason.

17. Upon cancellation, the IO required that "all unspent amounts will be returned to the Client by Agency no later than five (5) business days following such termination."

18. The IO separately required Adloop to comply with a Money Back Guarantee. If ProMedia determined, based on its own tracking and data, that Adloop's services did not produce

a return on ad spend of at least $500,000.00, Adloop was required to pay a Refund Amount equal to each dollar by which the actual return on ad spend fell below that benchmark, capped at 100% of the fees ProMedia paid.

19. The IO sets out Adloop's reporting obligations in a schedule at Exhibit A (the “Reporting Requirements”). The Reporting Requirements obligated Adloop to provide:

a. daily reporting of impressions cleared, including volume, spend, CPM, and source application or publisher, delivered no later than 12:00 p.m. Eastern on the following business day;

b. the exact time each impression was served, at the hourly level and based on impression-level timestamps rather than batch-processing timestamps, with log processing times, batch export times, and other non-delivery timestamps expressly prohibited;

c. certification that all impressions were served exclusively on connected television devices, mobile, desktop, tablet, and in-browser inventory being prohibited;

d. full application-level and publisher-level transparency for each application, including impressions, spend and CPM, video start rate, video completion rate, and household reach and frequency metrics, category-level or aggregated reporting being insufficient;

e. timestamped delivery detail by date and hour; and

f. designated market area reporting for 100% of delivered impressions.

20. Adloop did not provide the reporting the IO required.

21. Without that reporting, ProMedia could not verify what inventory Adloop was purchasing, whether impressions were served on connected television devices, or whether its funds were being spent at all.

22. ProMedia timely exercised its cancellation right under the IO and demanded the return of all unspent amounts.

23. Of the $500,000.00 ProMedia paid, Adloop expended $2,100.00 on advertising that actually ran for ProMedia.

24. The remaining $497,900.00 was unspent.

25. Adloop was required to return that $497,900.00 to ProMedia no later than five business days following termination.

26. Adloop did not return the funds within five business days. Adloop has not returned any portion of the funds at any time.

27. ProMedia also determined, based on its own tracking and data, that Adloop's services did not produce a return on ad spend of at least $500,000.00, and demanded the Refund Amount under the Money Back Guarantee.

28. Adloop did not pay the Refund Amount.

29. On July 13, 2026, ProMedia sent Adloop a written notice of breach demanding repayment and setting a cure deadline of July 23, 2026 at 5:00 p.m. Eastern. A copy of that letter is attached as Exhibit 2.

30. Adloop did not make payment by the cure deadline.

31. ProMedia has received no payment from Adloop, in any amount, at any time, on account of the obligations described above.

32. The amount currently due and owing from Adloop to ProMedia is $497,900.00, exclusive of prejudgment interest, attorneys' fees, and costs.

33. All conditions precedent to the bringing of this action have occurred, have been performed, or have been waived.

**COUNT I**
**BREACH OF CONTRACT**

34. ProMedia realleges and incorporates paragraphs 1 through 33 as though fully set forth herein.

35. The IO is a valid and enforceable contract between ProMedia and Adloop.

36. ProMedia performed its obligations under the IO, including payment of the full $500,000.00 upon execution.

37. Adloop materially breached the IO by failing to return all unspent amounts within five business days following ProMedia's termination, and by failing to pay the Refund Amount required under the Money Back Guarantee.

38. As a direct and proximate result of Adloop's breaches, ProMedia has been damaged in the amount of $497,900.00, plus prejudgment interest.

39. The IO obligates the Client to reimburse the Agency for all costs, including attorneys' fees, incurred in collecting amounts due. Under Fla. Stat. § 57.105(7), that provision is reciprocal, and ProMedia is entitled to recover its attorneys' fees as the prevailing party.

**COUNT II**
**BREACH OF CONTRACT**

40. ProMedia realleges and incorporates paragraphs 1 through 33 as though fully set forth herein.

41. The Reporting Requirements imposed specific, mandatory obligations on Adloop, including daily clearance reporting with impression-level timestamps, certification that all inventory was connected television only, application-level and publisher-level transparency, timestamped delivery detail, and designated market area reporting.

42. Those obligations were material. They were the mechanism by which ProMedia could confirm that its prepaid funds were being used to purchase the inventory it had bargained for.

43. Adloop breached those obligations by failing to provide the required reporting.

44. As a direct and proximate result of Adloop's breach, ProMedia was deprived of the ability to monitor and verify Adloop's performance, was unable to detect Adloop's nonperformance in time to mitigate, and has been damaged.

**COUNT III**
**UNJUST ENRICHMENT**
*(Pled in the Alternative)*

45. ProMedia realleges and incorporates paragraphs 1 through 33 as though fully set forth herein.

46. This count is pled in the alternative to Counts I and II.

47. ProMedia conferred a benefit on Adloop by paying it $500,000.00.

48. Adloop had knowledge of the benefit and voluntarily accepted and retained it.

49. Adloop retained $497,900.00 of ProMedia's money without providing the advertising services for which the money was paid and without returning it.

50. Under these circumstances it would be inequitable for Adloop to retain the benefit without paying ProMedia its value.

51. ProMedia is entitled to restitution in the amount of $497,900.00.

**COUNT IV**
**CONVERSION**
*(Pled in the Alternative)*

52. ProMedia realleges and incorporates paragraphs 1 through 33 as though fully set forth herein.

53. This count is pled in the alternative to Counts I and II.

54. ProMedia owned and had an immediate right to possession of the $497,900.00 in unspent funds.

55. Those funds were paid for a defined contractual purpose, were held by Adloop as a credit against which ProMedia could purchase advertising, and were subject to return within five business days of termination. They are a specifically identifiable sum rather than a general debt.

56. ProMedia demanded return of the funds, including by the written demand of July 13, 2026.

57. Adloop refused and continues to refuse to return them.

58. Adloop has wrongfully asserted dominion and control over ProMedia's funds in a manner inconsistent with ProMedia's superior right to possession.

59. As a direct and proximate result, ProMedia has been damaged in the amount of $497,900.00.

**COUNT V**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
*(Fla. Stat. § 501.201, et seq.)*

60. ProMedia realleges and incorporates paragraphs 1 through 33 as though fully set forth herein.

61. Adloop engaged in trade or commerce within the meaning of Fla. Stat. § 501.203(8) by soliciting, contracting for, and purporting to provide advertising services to a Florida business.

62. Adloop engaged in unfair and deceptive acts and practices by accepting $500,000.00 in prepaid advertising funds, failing to place the advertising it was paid to place, withholding the reporting that would have revealed its nonperformance, and refusing to return the money when the contract required it.

63. Withholding the required reporting was not incidental. It was the means by which Adloop kept ProMedia from learning that its funds were not being spent as agreed.

64. These acts and practices were likely to mislead, and did mislead, a reasonable business in ProMedia's position.

65. ProMedia suffered actual damages of $497,900.00 as a direct and proximate result.

66. ProMedia is entitled to recover its actual damages, together with attorneys' fees and costs, under Fla. Stat. §§ 501.211(2) and 501.2105.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ProMedia Inc. respectfully requests that this Court enter judgment in its favor and against Defendants Adloop Media USA, Inc. and Adloop Media Inc. as follows:

a) Awarding damages in the principal amount of $497,900.00;

b) Awarding prejudgment interest from the date of loss through the date of judgment;

c) Awarding attorneys' fees and costs as permitted by law, including under Fla. Stat. §§ 57.105(7), 501.211(2), and 501.2105;

d) Awarding post-judgment interest under 28 U.S.C. § 1961;

e) Retaining jurisdiction to enforce any judgment entered and to conduct proceedings supplementary; and

f) Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

**BLACK LAW P.A.**
*Counsel for Plaintiff*
1401 E. Broward Blvd., Ste. 304
Fort Lauderdale, Florida, 33301
ph. 954-320-6220/f. 954-320-6005

/s/ *Cody Shilling*
______________________________
**KELSEY K. BLACK, ESQ.**
Fla. Bar No. 78925
kb@blacklawpa.com
**CODY J. SHILLING, ESQ.**
Fla. Bar No. 1010112
cs@blacklawpa.com